UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS McDOUGLE, et al.,<br>    Plaintiffs,<br><br>v.<br><br>DAKOTA OF ROCKY HILL, LLC,<br>    Defendant. | No. 3:17-cv-00245 (SRU) |

**RULING ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

This lawsuit was brought by Thomas T. McDougle ("McDougle") and Rosemarie Taylor ("Taylor") against their employer Dakota of Rocky Hill, LLC ("Dakota"), a steakhouse and tavern in Connecticut. McDougle has worked as a restaurant server at Dakota since August 2015 and Taylor has been a server since October 2015. McDougle and Taylor ("the Plaintiffs") claim that Dakota violated Connecticut and federal law by failing to satisfy the Fair Labor Standards Act's ("FLSA") "Tip Credit" notice requirement. Specifically, the Plaintiffs allege that Dakota violated Section 203(m) of the FLSA by taking a tip credit against its servers' wages from February 2014 to the present without providing sufficient notice. On October 19, 2018, the Plaintiffs filed a motion for class certification pursuant to 29 U.S.C. § 216(b). *See* Doc. No. 79. I held oral argument on June 11, 2019 and took the motion under advisement. *See* Doc. No. 103. For the reasons that follow, the motion is **denied**.

**I.     Standard of Review**

Under the FLSA, a collective action for unpaid wages may be maintained by any one or more employees for and on "behalf of himself or themselves and other employees similarly

situated." 29 U.S.C. § 216(b).[1] Conditional certification is appropriate if a plaintiff makes a "factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010) (internal citations and quotations omitted).

"District courts in this circuit have undertaken a two-stage inquiry" in deciding whether notice should be issued. *Perkins v. New Eng. Tel. Co.*, 669 F. Supp. 2d 212, 217 (D. Conn. 2009). First, the court must "determine whether the proposed class members are similarly situated." *Id*. For the first step in the inquiry, before discovery is conducted, "a class representative has only a minimal burden to show that he is similarly situated to the potential class, which requires a modest factual showing sufficient to demonstrate that they and the potential class members together were victims of a common policy or plan that violated the law." *Marcus v. Am. Contract Bridge League*, 254 F.R.D. 44, 47 (D. Conn. 2008) (internal quotations omitted). If the first inquiry is satisfied, then the action may be conditionally certified as a collective action, and, accordingly, notice may be issued to the prospective class members. *Id.*

During the second step, which follows the discovery phase, a court "examine[s] all the evidence then in the record to determine whether there is a sufficient basis to conclude that the proposed class members are similarly situated." *Id.* "At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016).[2]

---

[1] Collective actions brought under 29 U.S.C. § 216(b) are "not subject to the numerosity, commonality, and typicality rules of a class action under Federal Rule of Civil Procedure 23." *Thompson v. Linda And A., Inc*., 779 F. Supp. 2d 139, 143 (D.D.C. 2011) (citing *Hunter v. Sprint Corp*., 346 F. Supp. 2d 113, 117 (D.D.C. 2004)).

[2] Dakota argues that "a heightened standard of review" should apply because the parties have already completed discovery on the FLSA notice issue. *See* Def's Opp. (Doc. No. 80) at 22. Dakota relies on *Rosario v. Compass Grp., USA, Inc.*, where the court acknowledged the use of an "intermediate" standard, (more than a "modest factual showing" required in step one, but less than the showing required at the second step following full discovery), after

The district courts possess discretionary power to authorize the sending of notice to potential class members. *Hendricks v. J.P. Morgan Chase Bank, N.A.*, 263 F.R.D. 78, 82 (D. Conn. 2009). Notice is intended to be issued early in the course of a collective action to "ascertain [] the contours of the action at the outset" and further the broad remedial purpose of the FLSA. *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 171 (1989). When evaluating whether to authorize notice in FLSA collective actions, district courts have authority to scrutinize the merits of the Plaintiffs' claims. *See, e.g., Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 n.9 (S.D.N.Y. 2008).

**II.     Background**

Under the FLSA, "an employer of a 'tipped employee'—i.e., an employee engaged in an occupation in which he or she customarily and regularly receives more than $30 a month in tips, . . . may utilize a unique payment structure to compensate employees." *Benavidez v. Greenwich Hotel Ltd. P'ship,* 2019 WL 1230357, at *9 (D. Conn. Mar. 15, 2019) (internal citation and footnote omitted). "Employers may pay a tipped employee using a combination of: (1) a base hourly wage . . . which may be as low as $2.13; and (2) an additional amount on account of the tips received by the employee (commonly known as a 'tip credit') that is equal to the difference between the base hourly wage and the statutory minimum wage." *Id.* (internal footnotes omitted).

Pursuant to Section 203(m) of the FLSA, an employer must inform its tipped employees of the tip credit provisions of the FLSA in order to retain the "tip credit" against their wages. *See* 29 U.S.C. § 203(m). Under that requirement an employer must: (1) inform its employees of their

---

the parties "engaged in some discovery" regarding the FLSA claims. 2016 WL 471249, at *3. Because I conclude that the Plaintiffs are unable to meet their burden under the "modest factual showing" standard, I decline to adopt a heightened standard of review.

server cash wage amount;[3] (2) inform its employees that they will make tips that will amount to a combined wage that is equal or more than the federal minimum wage (which is currently $7.25 per hour); and (3) allow the employees to retain all tips except for tips that are used in tip pools among employees who customarily and regularly receive tips. *See* 29 U.S.C. § 203(m)(2)(a). The burden is on the employer to comply with Section 203. *See Fuk Lin Pau v. Jian Le Chen*, 2015 WL 6386508, at *2 (D. Conn. Oct. 21, 2015). "If [an] employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken . . . ." *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994).

In April 2011, the Department of Labor ("DOL") revised its regulations regarding the FLSA. *See* Updating Regulations Issued Under the Fair Labor Standards Act, 76 FR 18832-01. Those revisions include further explanation of Section 203(m)'s tip notice requirement, now codified as 29 C.F.R. § 531.59(b), which provides that a restaurant employer may not:

> [T]ake the tip credit *unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.*: [1] The amount of the cash wage that is to be paid to the tipped employee by the employer; [2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, [3] which amount may not exceed the value of the tips actually received by the employee; [4] that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; [5] and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section . . . .

29 C.F.R. § 531.59(b) (emphasis added).

Here, the Plaintiffs allege that Dakota failed to notify its restaurant servers of the five specific provisions of the DOL's revised regulations. *See* Pls' Mem. in Supp. Mot. for Class Cert. (Doc. No. 79-1) at 2. They argue that Dakota's server orientation, its employee handbook, and its wage posters all fail to satisfy the requirements of the FLSA. The Plaintiffs claim that all

---

[3] Also referred to as the "server's minimum wage."

Dakota's servers undergo the same orientation program when they are hired. *Id*. at 12. During orientation, restaurant servers were orally told details about their compensation but allegedly were never notified of the specific tip credit provisions of Section 203(m) and the amended DOL regulation. To support that assertion, the Plaintiffs rely on Dakota's new employee handbook (doc. no. 79-3) and Dakota's "Tip Reporting Policy Form" (doc. no. 68-1 at 9–10), which, according to the Plaintiffs, both fail to expressly inform Dakota servers of the tip credit notice requirement.

The Plaintiffs also allege that Dakota failed to display any state or federal wage posters in its restaurant until after the lawsuit commenced. *See* Pls' Mem. in Supp. Mot. for Class Cert. at 16. After the action was filed, the Plaintiffs contend that Dakota installed a federal wage poster that states, "[e]mployers of 'tipped employees' must pay a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation. If an employee's tips combined with an employer's cash wage of at least $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference. Certain other conditions must also be met." Doc. No. 52-3 at ¶ 21. In addition, beginning in February 2017, Dakota began providing each server with a document entitled "Notice of FLSA Tip Credit."[4] *See* Doc. No. 68-1 at 12.

The current suit was initially filed by McDougle and Taylor on February 15, 2017. *See* Doc. No. 1. Dakota answered on March 20, 2017. *See* Doc. No. 14. The Plaintiffs filed an amended complaint on March 20, 2017. *See* Doc. No. 16. Since March 2017, nine other servers

---

[4] Dakota's "Notice of FLSA Tip Credit" states, " I, . . . [h]ave been informed and understand the following regarding the FLSA Tip Credit[:] (1) the cash hourly wage paid to tipped employees is no less than $6.38 per hour[.] (2) The additional amount claimed by the employer as a tip credit, which cannot exceed $3.72 (the difference between the minimum required cash wage of $5.00 and the current minimum wage of $10.10)[.] (3) The tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee. (4) That all tips received by the employee are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (5) That the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions." Doc. No. 68-1 at 12.

5

have joined the action. Plaintiffs previously moved for class certification on February 7, 2018 (doc. no. 52) and I denied their motion without prejudice to renewal following discovery on July 18, 2018. *See* Doc. No. 77. The Plaintiffs filed their second motion for class certification on October 19, 2018. *See* Doc. No. 79.

**III. Discussion**

    A. <u>Tip Notice Requirement</u>

The crux of the Plaintiffs' complaint is that, between February 2014 and February 2017, servers at Dakota were not notified of the tip credit provisions of Section 203(m). "[Dakota] admitted through sworn testimony that it failed to notify any Server of the tip credit provisions in any way during their orientation prior to February 2017 when the Plaintiffs filed this lawsuit." *See* Pls' Mem. in Supp. Mot. for Class Cert. at 19 (footnote omitted). The Plaintiffs assert that all Dakota servers employed from February 2014 through February 2017 received the same orientation, which included distribution of Dakota's "Tip Reporting Policy" and "New Hire Authorization" forms. *See id.* at 20. Those forms, the Plaintiffs contend, failed to notify servers that Dakota would take a "tip credit" against their wages by paying them the Connecticut sever wage instead of the full federal minimum wage.

In addition, the Plaintiffs argue that the posters displayed inside the restaurant are inadequate. "[Dakota's federal wage poster] only states that an employer may accept the tip credit when 'certain other conditions are met' and does not describe what those conditions are. The poster does not notify [Dakota] Servers 'of the amount claimed by the employer as a tip credit.'" *Id.* at 21. Moreover, the Plaintiffs assert that Dakota's document entitled "Notice of FLSA Tip Credit" inaccurately misinforms servers of the exact tip amount. The "Notice of FLSA Tip Credit" states that "the 'additional amount claimed by the employer as a tip credit,

6

which cannot exceed $3.72[,]' is the difference between the minimum required cash wage of $5.00 and the current minimum wage of $10.10." *Id.* at 22. According to the Plaintiffs, when Dakota servers received the "Notice of FLSA Tip Credit," the minimum cash wage for servers in Connecticut was actually $6.38. *See id.* As a result, the Plaintiffs argue that all Dakota servers were subject to the same violation of the FLSA.

In response, Dakota argues that the Plaintiffs have no viable FLSA claims because all servers at Dakota received multiple forms of written and oral notice of its tip credit policy. Dakota notes that the FLSA statute and DOL regulation only requires employers to "inform" its employees of the tip notice requirements, as opposed to "explaining" them. Under the plain language of the regulation, Dakota asserts that "employers do not have to engage in an exhaustive effort (or any effort at all) to explain any of these concepts and employees do not even have to understand any of the requirements." Def's Opp. at 25. For that proposition, Dakota relies on *Pellon v. Bus. Representation Int'l Inc.*, where the court noted that "[e]mployers do not have to explain the tip credit to employees, however; it is enough to inform them of it. To inform an employee requires less effort than it would to explain the tip credit to the employees." 528 F. Supp. 2d 1306, 1310 (S.D. Fla. 2007), *aff'd*, 291 F. App'x 310 (11th Cir. 2008) (summary order) (internal citations and quotations omitted).

In this case, Dakota contends that it has adequately "informed" its servers of the tip notice requirement through its internal polices and labor posters. First, Dakota states that restaurant general manager Joy Benzing ("Benzing") told servers about their compensation during orientation. Specifically, she indicated that servers would be paid the Connecticut server minimum plus tips. *See* Def's Opp. at 29. "Our goal was to let them know that they weren't getting paid minimum wage and that their tips would more than compensate that gap between

7

what we paid them and, you know, what they made in tips." Benzing Dep. (Doc. No. 79-2) at 23. Dakota asserts that Benzing's approach "is an explanation – in understandable plain English – of what the tip credit is and how it applies to the servers. It is far easier for a layperson, who never went to law school, to understand [Benzing's] explanation of the tip credit than the actual wording of Section 3(m)." Def's Opp. at 29.

Secondly, Dakota notes that its orientation documents clearly describe how its servers are paid. For example, Dakota cites Taylor's deposition, where she admits filling out a New Hire Authorization Form during her orientation and writing down her hourly wage of $5.78 an hour. *See* Taylor Dep. (Doc. No. 80-1) at 45; Taylor New Hire Authorization (Doc. No. 80-1) at 51. Additionally, Dakota contends that its Employee Handbook clearly indicates that Dakota retains a tip credit from its servers. The Handbook states that a "[t]ip credit will be factored into the hourly rate for tipped employees" and that tips must be recorded at "the end of each shift as calculated through the cash out procedure." Dakota Employee Handbook (Doc. No. 80-1) at 96–97.

Next, Dakota argues that its Connecticut labor poster is sufficient to inform servers of the FLSA tip credit. "Dakota has at all times had the Connecticut labor poster prominently hanging in a conspicuous place in the Restaurant. Dakota's evidence that the Connecticut poster was prominently displayed is sufficient for this Court to conclude that the Plaintiffs were 'informed' of its contents, even if [the] Plaintiffs lack any recollection of seeing the poster." Def's Opp. at 33 (internal citations and footnote omitted). Dakota contends that its Connecticut labor poster is more informative than its federal labor poster because it describes in detail how Dakota servers are compensated pursuant to the Connecticut minimum wage. *See id.* at n.13. The Connecticut labor poster includes the Connecticut minimum wage and provides in relevant part:

8

**Sec. 31-60-2. Gratuities as part of the minimum fair wage**

(a) Unless otherwise prohibited by statutory provision or by a wage order, gratuities may be recognized as constituting a part of the minimum fair wage when all of the following provisions are complied with . . . .

   (2) The amount received in gratuities claimed as a credit for part of the minimum fair wage shall be recorded on a weekly basis as a separate item in the wage record, even though payment is made more frequently, and . . . .

(b) Allowances for gratuities as part of the minimum wage shall not exceed 34.6% on January 1, 2014 and 36.8% on January 1, 2015 for employees employed in the hotel and restaurant industry, who customarily receive gratuities . . . . The wage paid to each employee shall be at least the minimum wage per hour for each hour worked, which may include gratuities not to exceed the limitation herein set forth, provided all conditions herein shall be met.

Conn. Labor Poster (Doc. No. 102-1) at 4.[5] Dakota contends that at a minimum, the Connecticut labor poster "informs" all servers of the first four points listed in 29 CFR § 531.59(b). "Dakota's evidence that it hung the Connecticut labor poster is dispositive of the Plaintiffs' entire FLSA tip notice claim . . . . [T]he [Connecticut labor law] poster is dispositive that servers were informed of four of the five requirements from the DOL regulation." Def's Opp. at 33.

Lastly, Dakota argues that the fifth point listed in 29 C.F.R. § 531.59(b) was covered at the end of every server's shift during the "cash out" process. *See id.* at 34. Each Dakota server would end their shift "cashing out" their tables and going over with a Dakota manager which tips each server would retain. *Id.* at 9. Through that process, Dakota asserts, each server was "informed" by a manager of the amount of tips each server would keep and the amount that was tipped out to a tip pool of hosts, bussers, and food runners. *Id.* at 34.

After reviewing the record, I conclude that Dakota adequately informed its servers of the five provisions of the tip notice requirement provided in 29 C.F.R. § 531.59(b). The FLSA was

---

[5] Dakota relies on its Connecticut Labor Poster because it contends that the poster was displayed inside the restaurant prior to the lawsuit being filed. *See* Def's Opp. at 33 n.13.

implemented to ensure that restaurant servers like McDougle and Taylor would receive fair compensation for their labor. In this case, it is undisputed that both named Plaintiffs made well above the federal minimum wage of $7.25. For example, the lowest hourly wage that Taylor earned in one week was $17.90 an hour. *See* Taylor Compensation Reports (Doc. No. 80-1) at 86–90. Similarly, McDougle's lowest hourly wage rate was $17.48 an hour. *See* McDougle Compensation Reports (Doc. No. 80-1) at 81–85.

Even when adopting a strict reading of the notice requirement as provided in 29 C.F.R. § 531.59(b),[6] Dakota's orientation process, internal policies, and wage posters collectively notified its servers of the five tip credit provisions of the DOL regulation. First, Dakota clearly informed its servers of the "amount of the cash wage that is to be paid to the tipped employee by the employer." 29 C.F.R. § 531.59(b). It is clear from Taylor's own testimony that servers were not only aware of the state minimum wage, but also knew that they would expect to make more than that amount as a server at Dakota. *See, e.g.,* Taylor Dep. at 43. "Q: Like you said, you wouldn't have worked at Dakota if [your total wage] was $10.10 [the Connecticut minimum wage] an hour and no tips, right? A: Correct. I don't think a lot of those servers would." In addition, the Connecticut labor poster installed inside the restaurant prominently displayed the Connecticut minimum wage, which is nearly $3 more an hour than the federal minimum wage.[7] *See* Conn. Labor Poster at 1.

Secondly, Dakota's Connecticut law poster informs its servers of points two, three, and five of 29 C.F.R. § 531.59(b). Dakota's Connecticut law poster provides that:

---

[6] The Second Circuit has not yet opined on whether an employer must satisfy all five requirements of the amended DOL Regulation codified at 29 C.F.R. § 531.59(b) in addition to the requirements provided in 29 U.S.C. § 203(m). Even when holding Dakota to the higher standard, it has adequately provided its employees sufficient notice to retain a tip credit against their wages.

[7] The Connecticut minimum wage is currently $10.10, which is $2.85 more than the federal minimum wage of $7.25. *See* History of Minimum Wage Rates, Conn. Dept. of Labor, available at, https://www.ctdol.state.ct.us/wgwkstnd/wage-hour/history.htm.

10

(c) Unless otherwise prohibited by statutory provision or by a wage order, gratuities may be recognized as constituting a part of the minimum fair wage when all of the following provisions are complied with . . . .

  (3) The amount received in gratuities claimed as a credit for part of the minimum fair wage shall be recorded on a weekly basis as a separate item in the wage record, even though payment is made more frequently, and . . . .

(d) Allowances for gratuities as part of the minimum wage shall not exceed 34.6% on January 1, 2014 and 36.8% on January 1, 2015 for employees employed in the hotel and restaurant industry, who customarily receive gratuities . . . . The wage paid to each employee shall be at least the minimum wage per hour for each hour worked, which may include gratuities not to exceed the limitation herein set forth, provided all conditions herein shall be met.

Conn. Labor Poster at 4. That language is sufficient to provide servers notice that Dakota may not retain a tip credit against their wages unless "[2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, [3] which amount may not exceed the value of the tips actually received by the employee . . . [and] [5] that the tip credit shall not apply to any employee who has not been informed of these requirements in this section . . . ." 29 C.F.R. § 531.59(b).

Finally, the fourth point of 29 C.F.R. § 531.59(b) was covered during the "cash out" process at the end of each server's shift. Benzing noted that, each night, Dakota's managers would review the amount of tips that each server would retain and decide how much of those tips would be tipped out to a tip pool for hosts, bussers, and food runners. *See* Benzing Decl. (Doc. No. 68-1) ¶ 6. Taylor testified that she fully understood what the cash out procedure entailed.

Q: Do you have an understanding of who the tip-out went to?

A: Yes. The bartenders and the hosts and the food runners . . . .

Q: The first time you tipped out you were told that this tip-out is going to go – you were going to retain a portion of your tips, and the rest of the tips are going to go to these other employees? . . .

11

> A: Yes. It was going to the other employees.
>
> Q: By the first day working at Dakota, you understood how your tip retention was going to work?
>
> A: Yes.

Taylor Dep. at 25. It is evident from the "cash out" process that Taylor was aware that "all tips received by the employee [are to] be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips . . . ." 29 C.F.R. § 531.59(b).

For the reasons stated above, I conclude that Dakota informed its servers of the tip notice provisions outlined in 29 C.F.R. § 531.59(b).[8]

B. Class Certification

Because Dakota has satisfied the tip notice requirement, the Plaintiffs' claims fail on the merits. Therefore, the question whether Dakota servers are similarly situated for purposes of class certification is moot.

**Conclusion**

For the foregoing reasons, I **deny** the Plaintiffs' motion for conditional class certification because the plaintiffs' claims do not succeed on the merits.

So ordered.

Dated at Bridgeport, Connecticut, this 30th day of September 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

[8] Because Dakota satisfied the notice requirement under 29 C.F.R. § 531.59(b), it has also satisfied the notice requirement under 29 U.S.C. § 203(m).